Frederico RODRIGUEZ,
Plaintiff-Appellant,

v.

COMPASS SHIPPING CO. LTD. and
Djakarta Lloyd, P.N.,
Defendants-Appellees.

No. 362, Docket 79–7132.

United States Court of Appeals,
Second Circuit.

Argued Dec. 6, 1979.

Decided March 19, 1980.

Morris Cizner, New York City (Zimmerman & Zimmerman, New York City, of counsel), for plaintiff-appellant.

Joseph T. Stearns, New York City (William J. Blumenschein, Walker & Corsa, New York City, of counsel), for defendants-appellees.

Before WATERMAN, MOORE and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

This is one of a series of personal injury actions by longshoremen against shipowners or charterers, nearly all of which have been dismissed by district courts pursuant to § 33(b) of the Longshoremen's and Harbor Workers' Compensation Act (the Act), 33 U.S.C. § 933(b) on the ground that since the plaintiff in each case settled a compensation claim filed by him against his employer (a stevedoring company) under the Act, accepted the agreed-upon sum, and failed to sue the shipowner until more than six months after the settlement award, he lost

his right to assert the claim which was by operation of § 33(b) automatically assigned to his employer. See also *Panzella v. Skou,* 471 F.Supp. 303 (S.D.N.Y.1979); *Francavilla v. Bank Line, Ltd.,* 470 F.Supp. 94 (S.D. N.Y.1979); *Perez v. Arya National Shipping Line, Ltd.,* 468 F.Supp. 799 (S.D.N.Y. 1979); *Hernandez v. Costa Armatori,* 467 F.Supp. 1064 (E.D.N.Y.1979); *Perez v. Costa Armartori,* 465 F.Supp. 1211 (S.D.N.Y. 1979); *Bandy v. Bank Line, Ltd.,* 442 F.Supp. 882 (E.D.Va.1977).

Section 33(b) provides that

"(b) Acceptance of [statutorily fixed] compensation under an award in a compensation order filed by the deputy commissioner or [Benefits Review] Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award."

An employer successfully bringing suit against a third party following a statutory assignment must pay the proceeds to the employee, keeping for itself the amount of compensation it paid, attorney's fees, and 20% of the balance. 33 U.S.C. § 933(e). If the employee brings suit himself, he must repay his employer out of the proceeds, retaining the balance of the damage recovery. *The Etna,* 138 F.2d 37, 41 (3d Cir. 1943).

Plaintiff contends that since his claim under the Act was not the subject of a formal compensation order filed by the deputy commissioner or Board no assignment occurred and his action is neither precluded nor time-barred. He further argues that, even assuming an assignment, since the employer has no intention of prosecuting the claim against the shipowner any assignment of his claim under the terms of the Act must be treated as null and void because of a conflict between his interest and that of his employer. We disagree on both counts and affirm.

On September 4, 1973, plaintiff, a longshoreman employed by the stevedoring

company International Terminal Operating Co., Inc. (International), was injured while unloading the S.S. South Breeze, docked in Brooklyn, which was owned by Compass Shipping Company and operated by Djakarta Lloyd as bareboat charterer. Pursuant to § 5(b) of the Act, 33 U.S.C. § 905(b), he filed a workmen's compensation claim against his employer International, which was self-insured, with the Office of Workers' Compensation Programs (OWCP), U.S. Department of Labor. The statute provides for compensation in fixed amount by the employer regardless of fault.

Under regulations implementing the Act, see 20 C.F.R. §§ 702.311–314, a claims examiner employed by the Department of Labor convened an informal conference. At the conference plaintiff and his employer reached an agreement settling plaintiff's claim, which was then memorialized in a written agreement dated November 4, 1974, on an OWCP form regularly used for this purpose. Plaintiff was represented by counsel throughout the OWCP proceedings, the employer had its representative, and the matter was handled by the claims examiner pursuant to 20 C.F.R. § 702.312 which authorizes an informal conference to be called by the deputy commissioner or his designee. Title 20 C.F.R. § 702.312, which has since been revised, provided:

"§ 702.312 Informal conference; called by and held before whom.

"Informal conferences shall be called by the deputy commissioner or his designee assigned or reassigned the case and held before that same person, unless such person is absent or unavailable. When so assigned, the designee shall perform the duties set forth below assigned to the deputy commissioner."

The settlement agreement was signed by the plaintiff, his representative, the employer's representative and the claims examiner. The parties agreed as to the extent of plaintiff's disability, the amount of money due him and the amount of his counsel's fee. Payment of the agreed-upon amount was made promptly by the employer to plaintiff pursuant to the terms of the agreement.

Title 20 C.F.R. § 702.315, as it read at the time of the settlement, obligated the employer to commence paying the compensation benefits immediately, without regard to whether the deputy commissioner, acting personally or through his designee, see 20 C.F.R. § 702.312, *supra,* had filed a formal compensation order, which he was required to do. Title 20 C.F.R. § 702.315 provided:

"§ 702.315 Conclusion of conference agreement on all matters with respect to the claim.

"(a) Following an informal conference at which agreement is reached on all issues, the deputy commissioner shall embody the agreement in a formal compensation order, to be filed and mailed in accordance with § 702.349. Where the problem was of such nature that it was resolved by discussion by telephone or by exchange of written correspondence, the parties shall be notified by the same means that agreement was reached and then the deputy commissioner shall proceed to prepare, file and mail the formal compensation order. In either instance, when the employer or carrier has agreed to pay, reinstate or increase monetary compensation benefits, or to restore or appropriately change medical care benefits, such action shall be commenced immediately upon becoming aware of the agreement, and without regard to the receipt of the formal compensation order."

Following the execution of the settlement agreement, neither the deputy commissioner nor his designee filed and mailed a formal compensation order.

On July 2, 1977, plaintiff commenced the present action in the Southern District of New York against the shipowner (Compass Shipping Co. Ltd.) and bareboat charterer (Djakarta Lloyd, P.N.) after an earlier suit had on June 2, 1976, mistakenly been instituted in the same court against the shipowner only and was apparently dropped. On April 21, 1978, the defendants moved for summary judgment based on plaintiff's failure to sue within six months of the settlement agreement as required by 33 U.S.C. § 933(b).

On September 12, 1978, Judge Carter filed an opinion, 456 F.Supp. 1014, holding that the settlement agreement amounted to an order within the meaning of § 33(b), requiring plaintiff to sue within six months unless he could show that that section should not be applied because of a conflict of interest between himself and his employer with respect to the institution of a personal injury suit against the shipowner or charterer, see *Czaplicki v. The S.S. Hoegh Silvercloud,* 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956). Plaintiff was given 60 days within which, through use of discovery proceedings, to demonstrate a conflict. When plaintiff failed to adduce evidence other than his attorney's affidavit to the effect that the employer had a policy of not prosecuting actions based on a § 33(b) assignment, the district court granted summary judgment, dismissing the complaint on the ground that plaintiff's rights against the defendant had been assigned to his employer pursuant to § 33(b) by reason of his failure to bring suit against them within six months after the settlement. From this judgment plaintiff appeals.

## DISCUSSION

Appellant's threshold contention that defendants have no "standing" to raise the assignment defense because the shipowner's liability is unaffected by the assignment need not take us long. The argument is clearly without merit.

■ The defense raised by the defendants, that plaintiff is not the real party in interest, may always be invoked pursuant to F.R.Civ.P. 17(a), which provides that every action shall be prosecuted in the name of the real party in interest. Without this defense a defendant might be exposed to multiple suits based on the same claim. *United Federation of Postal Clerks v. Watson,* 133 U.S.App.D.C. 176, 184 & n. 34, 409 F.2d 462, 470 & n. 34 (D.C.Cir.), *cert. denied,* 396 U.S. 902, 90 S.Ct. 212, 24 L.Ed.2d 178 (1969). A person, such as the employer here, to whom a claim has been assigned under § 33(b), is the real party in interest. *Aetna Life Ins. Co. v. Moses,* 287 U.S. 530,

53 S.Ct. 231, 77 L.Ed. 477 (1933); *Moore v. Hechinger,* 75 U.S.App.D.C. 391, 127 F.2d 746 (D.C.Cir.1942). Assuming the assignment here to be valid, the right to sue is exclusively that of the employer, which has not joined in the action or ratified its commencement even though it has had a reasonable time to do so. The defense of assignment therefore is properly asserted as a procedural matter by the defendants.

■ Turning to the merits, the first question is whether the settlement agreement amounted legally to an "award in a compensation order" of the deputy commissioner or [Workmen's Compensation] Board within the meaning of § 33(b), triggering its assignment provisions. Plaintiff first argues that the award must be approved by the deputy commissioner and that a claims examiner will not suffice. We disagree.

■ Section 39(a) of the Act, 33 U.S.C. § 939(a), empowers the Secretary of Labor to make such rules and regulations "as may be necessary in the administration of this chapter." Almost identical language has been construed by the Supreme Court to permit an official to delegate duties, *Fleming v. Mohawk Wrecking & Lumber Co.,* 331 U.S. 111, 121, 67 S.Ct. 1129, 1134, 91 L.Ed. 1375 (1947), and it is generally accepted in this day and age that a governmental administrator vested with such authority may delegate unless expressly forbidden by statute or by the inconsistency of such a delegation with the purposes of the statute. *E.E.O.C. v. Raymond Metal Products Co.,* 530 F.2d 590, 594 (4th Cir. 1976), 1 K. Davis, Administrative Law Treatise, § 3.18 (2d ed. 1978). Without the power to delegate the director or deputy director of large divisions of a government department would be hampered in the performance of his multifarious duties.

No sound reason is advanced by plaintiff here in favor of a narrow construction of the Act that would forbid such delegation. A claims examiner, well versed in the factors to be considered in protecting a claimant's right to adequate compensation, is in just as advantageous a position as a deputy

director to determine whether a settlement is in the best interest of an injured employee entitled to compensation. Nothing in the history of the statute indicates that Congress' purpose was to insure the exercise of the personal discretion of the deputy commissioner as distinguished from that of a duly qualified designee. We therefore hold that under the regulations in effect at the relevant time, an agreement settling an injured employee's claim to workmen's compensation, signed after an informal conference with a claims examiner, by whom it was approved, constitutes an "award" within the meaning of § 33(b).[1]

In support of his contrary interpretation appellant relies on earlier decisions holding that, although the formality of an order is not required, *Toomey v. Waterman S.S. Corp.*, 123 F.2d 718, 721 (2d Cir. 1941), a settlement agreement signed by a claims examiner is insufficient to satisfy the requirement of § 33(b) and that it does not become an award until signed by a deputy commissioner. *Grasso v. Lorentzen,* 149 F.2d 127, 129 (2d Cir.), *cert. denied,* 326 U.S. 743, 66 S.Ct. 57, 90 L.Ed. 444 (1945); *Sessa v. Weeks Stevedoring Co.,* 56 F.Supp. 50 (S.D.N.Y.1943). These decisions, however, represented an effort to relieve claimants from the harshness of the Act as it existed prior to the 1959 amendments which govern the present case.

Prior to 1959, the right to sue third parties was assigned to the employer as soon as a settlement was reached. This forced an injured employee to elect at once between immediate compensation and delays and uncertainties of litigation at a time when he had cash flow problems. Many courts therefore invoked every available technicality to avoid finding an assignment.

Congress in 1959 amended § 33(b) to permit the employee to receive a statutory compensation award which would not oper-ate as an assignment unless he failed to sue within six months. S.Rep. No. 428, 86th Cong., 1st Sess., reprinted in 1959 U.S.Cong. & Admin.News, pp. 2134–35. With the elimination of the harshness that prompted *Grasso* and *Sessa,* the Act as it stood at the time of the events here should be construed "from the realities of the situation rather than by the labels employed," *Sabol v. Merritt Chapman & Scott Corp.,* 241 F.2d 765, 767 (2d Cir. 1957). We see no reason to prevent the OWCP from allowing a claims examiner to approve settlements.

■ Appellant's next contention is that since neither the deputy commissioner nor the claims examiner filed a formal compensation order, there was no assignment under § 33(b). We disagree. The purpose of the provision for filing of an order was to insure that the claimant-employee knew that he was foregoing his right to sue by acceptance of the compensation agreement. H.Rep. No. 1945, 75th Cong., 3rd Sess. at 9 (1938). Where, as here, the employee, upon signing the compensation agreement with the assistance and co-signature of his counsel, is fully aware of his rights, including his right to sue within six months, the failure of an administrator to comply with the formality imposed by departmental regulations (20 C.F.R. § 702.315, *supra* ) of filing the formal order can have no significance as far as the substantive rights of the parties are concerned. The employer's obligation to start paying compensation to the employee commences immediately upon signing of the agreement. To delay the operation of § 33(b) until the filing of an order would be to exalt form over substance. Accordingly, we conclude that under the regulations as they existed prior to September 9, 1977, which are the regulations applicable to this case, § 33(b) applied and operated to assign

---

1. The regulations were revised effective September 9, 1977, subsequent to the relevant events in this lawsuit. As now written, 20 C.F.R. § 702.312 provides that while an informal conference may be called by "the deputy commissioner or his designee," a compensation order following an agreement may be issued only by a person designated by the Director of OWCP. Previously, such an order could be filed by anyone empowered to call the informal conference. We need not determine whether our result would differ had the settlement taken place after the new regulations took effect.

to appellant's employer his right to sue the shipowner.[2]

■ Notwithstanding the applicability of § 33(b), appellant, relying principally upon *Czaplicki v. The S.S. Hoegh Silvercloud,* 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956), contends that since the employer does not propose to sue the defendants, the assignment should be invalidated as a matter of public policy and appellant should have been permitted to bring suit more than six months after the compensation award. We disagree.

It is true that if the employer brought suit against the shipowner and recovered it would, after deduction from the proceeds of any compensation payments made to the employee plus attorney's fees in effectuating the recovery, be obligated to pay 80% of the balance to appellant and permitted to retain 20% for itself. To this extent the employee has an interest conflicting with that of the employer, which often chooses not to antagonize its customer, the shipowner, by bringing a suit against it. See *Valentino v. Rickners Rhederei, G.m.b.H.,* 552 F.2d 466 (2d Cir. 1977). The simple answer is that appellant was afforded six months to bring his own suit against the shipowner, free and clear of any control by the employer, but chose not to do so. We do not view the six months time bar as unreasonable or harsh under the circumstances.

*Czaplicki* is clearly distinguishable and, as we pointed out in *Sabol v. Merritt Chapman & Scott Corp.,* 241 F.2d 765, 768 (2d Cir. 1957), "was carefully limited by the court to the peculiar situation there presented." It was decided prior to the 1959 amendments of § 33(b). At that time the employee, upon entering into a settlement agreement with his employer and accepting compensation, immediately lost any right to sue the shipowner, since that right, by assignment, became exclusively the right of the employer. However, in *Czaplicki* the employer's insurer, which by subrogation acquired the employer's exclusive assigned right to sue, was also the shipowner's insurer. Thus, if the insurer brought suit it would as a practical matter not only be suing itself but also be under an obligation to turn over 80% of any recovery in excess of compensation payments and attorney's fees to the employee. In the absence of any right at all on the part of the employee to sue the shipowner, the Supreme Court understandably held that the conflict of interest was sufficient to nullify the assignment, noting that "Czaplicki's rights of action were held by the party most likely to suffer were the rights of action to be successfully enforced," 351 U.S. at 530, 76 S.Ct. at 949. Even in the absence of a common insurer, the prospect of a conflict between the interest of the employee and that of his employer with respect to the institution of suit against the shipowner arose as a result of the Supreme Court's decision five months earlier in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), that a shipowner held liable for injuries to a longshoreman could recover over against the employer-stevedore for breach of the latter's obligation to perform its duties safely. As a result, an employer suing the shipowner upon the employee's assigned claim might be met with the defense that the employer was ultimately liable. Thus the employer, unlike its employee, had no interest in pressing the assigned claim against the shipowner after payment of compensation and the employee, by virtue of the assignment, had lost any right to do so.

This state of affairs was changed by the 1959 amendments to § 33(b), which gave the employee six months within which to sue. It was further alleviated by Congress' amendment in 1972 of § 5(b) of the Act, 33

---

**2.** Effective September 9, 1977, 20 C.F.R. § 702.315 provides that a formal compensation order need not be filed unless either the employer or the employee requests it. It may be argued that under this new provision, the filing of an order has become more than a formality—the employer who fails to request an order may be waiving his right to assignment of the claim. Since the new regulations were not in effect at the time of the settlement of this claim or within six months thereafter (when the assignment became effective), we need not determine whether the change would affect the result in a case such as this.

U.S.C. § 905(b), which eliminated an employer's liability to a shipowner under the principles of *Ryan Stevedoring Co.* Moreover, had Congress desired when it amended the Act to give both the employee and the employer the right concurrently to sue the shipowner, nothing prevented it from doing so. Instead it chose to give the employee six months within which to bring such a suit and if the employee failed to do so within that period to assign the right exclusively to the employer. We are bound by that enactment. Although *Czaplicki* was applied in a few cases postdating the 1959 amendments to the Act, see, e. g., *McClendon v. Charente S.S. Co.,* 348 F.2d 298 (5th Cir. 1965); *Potomac Electric Power Co. v. Wynn,* 120 U.S.App.D.C. 13, 343 F.2d 295 (D.C.Cir.1965), we prefer, in view of the later changes in the Act, to treat *Czaplicki* as limited to its unique facts, which are not presented here.

The judgment of the district court is affirmed.